**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| A.B. PRATT & CO., | ) | |
| An Illinois Corporation, | ) | |
| Plaintiff, | ) | CASE NO. 1:22-cv-1579 |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIDGEPORT GROUP, LLC, | ) | |
| An Ohio Limited Liability Company. | ) | |
| VAIL NETWORK COMPANY, INC., | ) | **JURY DEMAND ENDORSED** |
| a/k/a VN SERVICES, INC., | ) | **HEREON** |
| An Ohio Corporation, | ) | |
| ALSHAW TECHNOLOGIES, INC., | ) | |
| A Delaware Corporation, | ) | |
| and | ) | |
| LISA PETERSON, | ) | |
| Defendants. | ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, A.B. Pratt & Co., ("AB Pratt"), by and through its attorneys, Carpenter Lipps & Leland, LLP and Lynch Thompson, LLP, hereby states as follows as its Complaint for Injunctive and Other Relief against Defendants BridgePort Group, LLC ("BPG") Vail Network Company, Inc. a/k/a VN Services, Inc. ("VN") Alshaw Technologies, Inc, ("Alshaw") and Lisa Peterson.

## INTRODUCTORY ALLEGATIONS

1.      Among its lines of business, AB Pratt, a consulting company, provides services to federal government clients which includes mentoring, training and recruiting selective consultants for federal government security projects involving technology and management consulting using AB Pratt's proprietary work products and confidential information. AB Pratt conducts separate confidential negotiations with the consultants and the clients.  To protect its business from being cut off after the consultant starts to provide services for the clients, and to secure its work products and prevent misappropriation of its proprietary information, AB Pratt requires both the consultant

side and client side to make contractual promises. AB Pratt will not do business with a client unless the client agrees (among other things) to refrain from poaching AB Pratt's business and consultants and to make no use of AB Pratt's secured confidential information. AB Pratt will not do business with a consultant unless the consultant agrees in writing to not solicit, pursue business opportunities, or enter into a separate agreement, either directly or indirectly with AB Pratt's direct clients, end-clients or third-party clients that the consultant encounters during their contractual engagement with AB Pratt.  In addition, AB Pratt will not do business with a consultant unless the consultant agrees: (a) to refrain from misappropriating AB Pratt's protected proprietary information including confidential work products; and (b) to refrain from  providing unauthorized services to other clients for consultant's economic gain.

2.     In this case, AB Pratt provided consulting services through BPG to   the Federal Reserve Bank of Cleveland ("FRB") as the end-client using AB Pratt's proprietary information. To simplify the allegations below, AB Pratt's client BPG, working in concert with AB Pratt's hand-picked consultant Peterson (through Alshaw), have done exactly what the contracts prohibit –providing services to FRB using AB Pratt's confidential information while AB Pratt has been cut out of the picture.  As for VN, it has encouraged and facilitated those breaches and tortiously interfered on both the client side and the consultant side by directly paying Peterson (through Alshaw) an amount actually owed to AB Pratt in exchange for AB Pratt's protected confidential information to create an economic advantage for themselves. In addition, VN and BPG aided Peterson and Alshaw to continue rendering unauthorized services to FRB breaching confidentiality and data security requirements.

## PARTIES, JURISDICTION AND VENUE

3.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a): the amount in controversy exceeds $75,000, exclusive of costs and interest, and there is complete diversity

between AB Pratt and the Defendants, which are citizens of different states as set forth more fully below.

4.     AB Pratt is a women-owned company with its principal place of business at 17 E. Monroe, Suite 226, Chicago, IL 60603. AB Pratt's business is focused on providing management consulting and leadership solutions for federal government, federal health care programs, government medical research and other fields that require a substantial concentration on data security issues but are geographically dispersed. Using its own custom-work products, AB Pratt serves as a one-stop shop for clients seeking consulting services, remote team augmentation, rapid hiring, and training for federal government projects.

5.     This Court has personal jurisdiction over BPG because, among other things, BPG is an Ohio LLC with its principal place of business at 55 Erieview Plaza #328, Cleveland, Ohio, 44114 and its registered statutory agent listed as: United States Corporation Agents, Inc., 411 Wolf Ledges Pkwy., Suite 201, Akron, Ohio 44311.  On information and belief, the members of BPG are citizens of Ohio and not Illinois. BPG's advertises itself on its website as a "truck and transportation company focused on supply chain management and logistics."

6.     This Court has personal jurisdiction over VN because, among other things, VN is an Ohio Corporation with its principal place of business at 8132 Mayfield Rd, Chesterland, Ohio, 44026 and its registered statutory agent listed as: Diana Chalmers, 8132 Mayfield Road, Chesterland, Ohio 44026.  VN advertises itself as a construction company with a focus on construction business in North America and abroad, and claims expertise in supply chain management and project management.

7.     This Court has personal jurisdiction over Alshaw, a Delaware Corporation with its principal place of business at 7753 Hidden Valley Drive, Papillion, Nebraska 68046 and Peterson (on information and belief located at the same address as Alshaw), because Alshaw together with

its principal Peterson has purposely availed itself of an Ohio forum by acting in concert with Ohio Defendants BPG and VN in committing in Ohio breaches of contract and certain tortious acts described below.  Alshaw has advertised itself as a space and defense contracting company. On information and belief, Peterson is the owner and chief executive of Alshaw.  Alshaw's registered statutory agent is listed as: The Company Corporation, 251 Little Falls Drive, Wilmington, Delaware 19808.

8.      Non-party Federal Reserve Bank of Cleveland ("FRB") is the end-client for BPG and AB Pratt, where Peterson through Alshaw is currently receiving payment for providing unauthorized services directly to the FRB, using AB Pratt's proprietary information leveraging the Government laptop to conceal their activities. Peterson, Alshaw, and BPG have collectively prevented AB Pratt from returning the confidential information belonging to the FRB as part of the confidential handover after contract termination.

9.      Venue is appropriate in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district.

## **BACKGROUND FACTS**

10.     AB Pratt has unique expertise not publicly-known. AB Pratt's expertise includes protected proprietary methods of both sourcing and training software and technology personnel and ensuring their successful onboarding by end users (the "AB Pratt Proprietary Information"). The AB Pratt Proprietary Information includes an ability of AB Pratt to rapidly identify, and train candidates for federal government security projects and provide other unique solutions for the needs of government clients and end users that require immediate service.  The AB Pratt Proprietary Information also allows AB Pratt to train candidates for client onboarding so that they will be accepted by end users that are geographically dispersed across the continent.

11.     AB Pratt acquired the AB Pratt Proprietary Information through more than 20 years of experience by its principal, investing significant financial and labor resources, including extensive analysis, pain staking research and network connections.  AB Pratt does not share the AB Pratt Proprietary Information outside AB Pratt without first obtaining non-disclosure agreements ("NDAs") that prohibit recipients from exploiting the AB Pratt Proprietary Information for their own use.

12.     AB Pratt was approached by BPG to rescue BPG from losing its multi-year contract with FRB due to its inability to provide immediate software support personnel for bank security projects.  BPG first reached out to AB Pratt in May 2021 immediately after obtaining a multi-year contract with the FRB to provide software support personnel for FRB's multi-year federal government security projects requiring rapid hiring of qualified personnel to fulfill the government specifications including diversity requirements.  The FRB project requirement for trained and certified women and diversity personnel was outside BPG's core expertise and BPG expressed a strong interest in partnering with AB Pratt, a women-owned business, to fulfill the federal government project needs.  BPG was desperate to keep its multi-year FRB contract which required it to supply software support personnel immediately.  When it approached AB Pratt, BPG had experienced several setbacks in its efforts to locate and deploy trained and certified software support personnel that are available for an immediate screening process. BPG was unable to satisfy FRB that the candidates BPG located could meet the security needs of FRB.  Indeed, several BPG candidates had been rejected by FRB.  But within days of BPG's approaching AB Pratt, AB Pratt supplied (10) trained personnel globally dispersed, all of whom were accepted by FRB and BPG for immediate selection and screening process.

13.     BPG leveraged AB Pratt's expertise, proprietary information, and rapid service in providing qualified and trained technology personnel by advertising AB Pratt's personnel as

BPG's consultants to FRB to gain credibility and extend their multi-year contract with FRB, while repeatedly promising AB Pratt a long-term (5) year contract that automatically renews each year and partnership with multiple placements for AB Pratt personnel in exchange. In August 2021, BPG requested AB Pratt's expertise to help draft a suitable Statement of Work for FRB on behalf of BPG to bring on (10) additional trained technology personnel since BPG lacked core expertise in that area. In October 2021, BPG notified AB Pratt that it was successfully able to extend their contract with FRB and needed multiple trained personnel from AB Pratt in order for BPG to expand their business into other divisions within FRB.

14.　　Although it used AB Pratt's consultants to secure and expand its contract with FRB, BPG breached its contract almost immediately, by refusing to pay AB Pratt's very first invoice despite several warnings from AB Pratt to comply. Throughout 2021, BPG repeatedly breached the contract by renegotiating payment terms for services already completed by AB Pratt Consultants for FRB, soliciting and luring AB Pratt Consultants undermining AB Pratt, refusing to pay invoices on time unless AB Pratt reduced their hourly rate for consultants despite BPG agreeing to these rates contractually prior to the onboarding and interview process with FRB in May 2021.

15.　　At some point during 2021, BPG sought assistance from VN in connection with, on information and belief, review and audits of AB Pratt's invoices.  In that connection, VN interfered with the payment relationship between AB Pratt and BPG, encouraging BPG to withhold payments due AB Pratt, including, on information and belief, amounts that BPG ended up billing to FRB for work that AB Pratt performed.

16.　　BPG along with VN assistance repeatedly breached the contract by undermining AB Pratt's role, frequently soliciting AB Pratt Consultants to help BPG place qualified and trained personnel for positions within FRB for the newly extended (5) year contract despite knowing that

AB Pratt is expending financial and labor resources to fill those positions for BPG and FRB. BPG brazenly requested AB Pratt consultants to introduce them to other competing consulting companies to obtain services, since BPG lacked the core expertise in the area, putting AB Pratt consultants in repeat violation of their own contractual obligations with AB Pratt. AB Pratt and their consultants repeatedly notified BPG that this is a violation of contractual commitments for all parties involved that BPG continued to ignore, all while withholding payment of invoices for AB Pratt.

17.    BPG and VN worked together to delay the authorization of hours worked by AB Pratt consultants resulting in delayed approval of hours for AB Pratt BPG and VN repeatedly blamed FRB as the reason for not being able to pay AB Pratt's invoices on time, while conveniently charging FRB for the same work hours that it refused to authorize for AB Pratt. VN repeatedly interfered with payment blaming FRB's management for delayed payment or lack of approval for work hours, despite knowing that AB Pratt's contract with BPG is based on a NET 30-day payment and has nothing do with BPGs payment schedule with FRB.

18.    In 2021 and 2022, due to repeated contractual violations by BPG and interference from VN undermining AB Pratt's role, AB Pratt lost several consultants and employees from the FRB project resulting in a significant financial impact and hardship to AB Pratt due to upfront costs and losing future client opportunities

19.    One of the many candidates identified by AB Pratt as a potential fit for the FRB security project was Lisa Peterson. Through its use of the AB Pratt Proprietary Information, AB Pratt identified Peterson as a candidate even though she lacked one of the certifications FRB stated as a requirement. Notwithstanding the absence of the certification, AB Pratt knew that if properly trained with the onboarding know-how that is part of the AB Pratt Proprietary Information, Peterson stood a good chance of being accepted by FRB. Peterson was initially rejected by FRB,

but after receiving several months of training from AB Pratt, Peterson met FRB's requirements for security and training and both BPG and Peterson reaped the benefit of having Peterson provide consulting services for FRB.

20.    Throughout the screening and training process with AB Pratt, Peterson identified herself as an employee of "Atech/"Atechoma", and concealed her actual designation of Chief Executive Officer and founder of Alshaw Technologies founded in 1996 as a Government contracting company, knowing this would limit her chance of  getting a contract with AB Pratt for FRB since AB Pratt only does business with qualified individual consultants and Alshaw is a direct competitor for AB Pratt and BPG.

21.    Peterson requested that her time be billed through Alshaw, a company that Peterson had not disclosed until the time of signature.  After assurances from Peterson, AB Pratt eventually accommodated Alshaw,  but both Peterson and Alshaw executed contracts that secured the AB Pratt Proprietary Information.

22.    AB Pratt expended significant financial and labor resources to enable Peterson to start the training and onboarding process for FRB through BPG using The AB Pratt Proprietary Information. Peterson also claimed to be short of funds and AB Pratt graciously paid Peterson a lump sum payment ahead of their first payment schedule despite not receiving timely invoice payment from BPG. Peterson eventually got certified for the FRB position several months after starting her work.

23.    BPG issued a contract termination notice to AB Pratt on May 27,  2022, but refused to follow the contract exit termination process including handover of confidential information and releasing AB Pratt staff from the FRB projects. Instead, BPG announced that business would continue as normal with AB Pratt staff working full time for FRB through BPG. BPG and VN encouraged AB Pratt consultants to breach their contractual obligations with AB Pratt ignoring

cease and desist notifications sent by AB Pratt's legal teams. The wrongful termination caused AB Pratt to lose (4) trained consultants that were available to start new client assignments for AB Pratt.

24.     Peterson through Alshaw immediately leveraged the wrongful termination of contract by BPG by directly soliciting and discussing potential work opportunities with FRB. BPG notified AB Pratt about Peterson's violation and insisted that Peterson wrongfully solicited FRB causing a negative impact on BPGs relationship with FRB. Peterson and Alshaw were sent a Cease and Desist in June 2022 by AB Pratt's legal team due to Peterson's unlawful dissemination of confidential information.

25.     Peterson ignored the Cease and Desist from AB Pratt and worked in concert with VN and BPG, undercutting AB Pratt by receiving payment directly from VN through BPG for services performed while Peterson was still performing work assigned to her by AB Pratt.

26.     During the time VN provided assistance to BPG, it was engaging in misconduct aimed at AB Pratt.  Specifically, it appears that VN was, at the same time working for BPG, actively undermining AB Pratt while seeking to learn the AB Pratt Proprietary Information from BPG, Peterson and Alshaw, all of whom were prohibited by contract from sharing any of that information with VN.  VN interfered with those contracts and acted in concert with BPG, Peterson and Alshaw to misappropriate the AB Pratt Proprietary Information and use it in competition with AB Pratt.  VN is incentivized to increase their presence on the FRB project for economic advantage.VN is involved in receiving invoice payments from FRB on behalf of BPG and repeatedly interfering with the payment of AB Pratt's invoices by demanding a refund of invoice amount for work already approved by FRB, despite VN not being a party to either the contract with BPG and FRB or the contract between BPG and AB Pratt.

27.     VN has financial and business interests in under-cutting AB Pratt from the FRB project, since VN has tried to bring in their own consultants to work on the FRB project through

BPG. FRB on several occasions has chosen AB Pratt consultants over VN candidates causing VN to be motivated to cut out AB Pratt to expand their own business.

## COUNT I
### (Breach of Contract by BPG –Unpaid Invoices)

28.     As and for its Paragraph 28, AB Pratt adopts and incorporates Paragraphs 1 through 27 as if fully restated herein.

29.     BPG and AB Pratt entered into a contract that (while executed by BPG on November 29, 2021) was effective as of May, 2021 (Exhibit A).

30.     Pursuant to the contract, AB Pratt agreed to submit invoices for work done for FRB by personnel sourced by AB Pratt and BPG agreed to pay the invoices within 30 days of receipt.

31.     As of the date of the filing of this Complaint, AB Pratt has approximately $30,000 in unpaid invoices for work approved by FRB and provided to FRB project through BPG, and on information and belief, BPG has already received payment for the same from FRB.

32.     Since May 2022, BPG has ensured approval of invoice hours for BPG and Peterson/Alshaw directly, while refusing invoice payment for AB Pratt's work hours already approved by FRB.

33.     Pursuant to Section 10.6, AB Pratt is entitled to its "reasonable attorneys' fees and costs" should it be the prevailing party.

**WHEREFORE**, AB Pratt prays for: (1) damages in an amount to be established at trial resulting from BPG's actions; (2) attorneys' fees and costs; and (3) such other and further relief as this Court deems equitable and just.

## COUNT II
### (Breach of Contract by BPG – Improper Retention of Peterson/Alshaw)

34.     As and for its Paragraph 34, AB Pratt adopts and incorporates Paragraphs 1 through 33 as if fully restated herein.

35.     BPG purported to terminate the BPG-AB Pratt contract effective June 10, 2022.

36.     At the time of termination, Peterson (through Alshaw) was performing work for FRB pursuant to the BPG-AB Pratt contract.

37.     BPG expressly agreed that during the term of the contract and for a period of three years after its termination, it would not "solicit or hire, either directly or indirectly, any employee contractor or consultant" of AB Pratt.

38.     BPG breached the contract by continuing to employ Peterson and Alshaw to provide services for FRB after the contract termination.

39.     In addition, BPG in concert with VN paid Alshaw directly approximately $18,000 for work while Alshaw was engaged in an active contract with AB Pratt in order to wrongfully retain Peterson and Alshaw after AB Pratt-BPG contract termination.

40.     Pursuant to Section 10.6, AB Pratt is entitled to its "reasonable attorneys' fees and costs" should it be the prevailing party.

**WHEREFORE**, AB Pratt prays for: (1) specific performance of its contract barring BPG's continued employment of Peterson (through Alshaw); (2) damages in an amount to be established at trial resulting from BPG's actions; (3) attorneys' fees and costs; and (4) such other and further relief as this Court deems equitable and just.

**COUNT III**
(Breach of Contract by BPG – Misuse of AB Pratt's Proprietary Information)

41.     As and for its Paragraph 41, AB Pratt adopts and incorporates Paragraphs 1 through 40 as if fully restated herein.

42.     BPG purported to terminate the BPG-AB Pratt contract effective June 10, 2022.

43.     The AB Pratt Proprietary Information is deemed "Confidential Information" under the BPG-AB Pratt contract.  In addition, AB Pratt owns additional "Confidential Information" in

11

the form of information created and stored on a laptop computer used by Peterson/Alshaw while Peterson/Alshaw were being paid by AB Pratt.

44. BPG continues to economically benefit from the confidential and proprietary information of AB Pratt obtained by promoting Peterson and Alshaw to breach their respective agreements with AB Pratt.

45. In the BPG-AB Pratt contract, BPG expressly agreed that upon termination, it would "return or destroy" all AB Pratt Confidential Information.

46. Despite demand by AB Pratt, BPG continues to use AB Pratt's Confidential Information through Alshaw for economic gain

47. Pursuant to Section 10.6, AB Pratt is entitled to its "reasonable attorneys' fees and costs" should it be the prevailing party.

**WHEREFORE**, AB Pratt prays for: (1) specific performance of its contract barring BPG's use of AB Pratt's Confidential Information; (2) damages in an amount to be established at trial resulting from BPG's actions; (3) attorneys' fees and costs; and (4) such other and further relief as this Court deems equitable and just.

<u>**COUNT IV**</u>
(BPG's Tortious Interference with AB Pratt's contract with Peterson/Alshaw)

48. As and for its Paragraph 48, AB Pratt adopts and incorporates Paragraphs 1 through 47 as if fully restated herein.

49. AB Pratt has a contract with Peterson (Exhibit B). Under the AB Pratt-Peterson contract, Peterson is barred from soliciting or working for AB Pratt's clients during the active contractual engagement and after the client terminates contract

50. AB Pratt has a contract with Alshaw (Exhibit C). Under the AB Pratt-Alshaw contract, Alshaw is barred from working for AB Pratt's clients after the client terminates. Per

section 8 of the AB-Alshaw contract Alshaw is also barred from pursuing any business opportunity that belongs to AB Pratt while providing services as an AB Pratt representative.

51.     On information and belief, BPG knows the terms of the AB Pratt-Peterson contract and the AB Pratt-Alshaw contract, but nevertheless has interfered with those contracts by inducing Peterson and Alshaw to continue working for the FRB with work billed through BPG.

52.     BPG enabled Peterson and Alshaw to work through a third-party company to continue providing services for FRB to cover up BPG's involvement.

53.     In addition, BPG and VN discussed payment terms and contracting opportunities with Alshaw to undercut AB Pratt which is prohibited in the AB Pratt-BPG contract, AB Pratt-Peterson contract as well as the AB Pratt- Alshaw contract.

54.     BPG solicited all AB Pratt staff and services undermining AB Pratt's contractual obligations with its consultants, claiming AB Pratt staff can work directly for FRB through BPG despite sending the termination notice to AB Pratt.

55.     BPG interfered with the Peterson-AB Pratt contract by claiming Peterson is allowed to continue working despite contract termination, and allowing Peterson to continue to use AB Pratt proprietary information while being paid by AB Pratt.

56.     BPG refused to make termination announcement to FRB and encouraged Peterson and Alshaw to breach their nondisclosure and warranties agreement with AB Pratt despite being aware that all work products created by Peterson through Alshaw belong to AB Pratt until written handover by AB Pratt.

**WHEREFORE**, AB Pratt prays for: (1) damages in an amount to be established at trial resulting from BPG's actions; and (2) such other and further relief as this Court deems equitable and just.

## COUNT V
(Breach of Contract by Peterson – Failure to Discontinue Work for FRB).

57.     As and for its Paragraph 57, AB Pratt adopts and incorporates Paragraphs 1 through 56 as if fully restated herein.

58.     AB Pratt has a contract with Peterson (Exhibit B). AB Pratt discontinued Peterson's service for FRB through AB Pratt after the BPG termination effective June 10, 2022.  Under the AB Pratt-Peterson contract, Peterson agreed that for two years after the date of her last service for AB Pratt, that she would not "directly or indirectly" solicit "the business or employment of [AB Pratt's] clients in whose service [Peterson] was involved."

59.     Notwithstanding her contractual promises, Peterson continues to provide unauthorized services for FRB using AB Pratt's confidential information.

**WHEREFORE**, AB Pratt prays for: (1) specific performance of its contract barring Peterson's continued work services at FRB through BPG; (2) damages in an amount to be established at trial resulting from Peterson's actions; (3) attorneys' fees and costs; and (4) such other and further relief as this Court deems equitable and just.

## COUNT VI
(Breach of Contract by Peterson – Fraud and Misrepresentation)

60.     As and for its Paragraph 60, AB Pratt adopts and incorporates Paragraphs 1 through 59 as if fully restated herein.

61.     Peterson induced AB Pratt to enter into a contractual relationship by misrepresenting her credentials to AB Pratt, concealing her history as the CEO of Alshaw for 26 years.

62.     Peterson told AB Pratt that she was an "employee and an engineer" of "Atech/Atechoma". Peterson further stated she needed to provide a "2 weeks resignation" notice

for her "employer" while concealing her real background with Alshaw, a government contracting company

63.     AB Pratt relied on Peterson's misrepresentations.  Had AB Pratt known the truth about Peterson, it never would have entered into a contract with Peterson, and because of that contract, AB Pratt has been damaged, by, among other things, having Peterson misappropriate AB Pratt's business opportunities with BPG, particularly the FRB project.

**WHEREFORE**, AB Pratt prays for: (1) damages in an amount to be established at trial due to AB Pratt's loss of business; (2) attorneys' fees and costs; and (3) such other and further relief as this Court deems equitable and just.

### COUNT VII
(Breach of Contract by Peterson – Misuse of AB Pratt's Proprietary Information)

64.     As and for its Paragraph 64, AB Pratt adopts and incorporates Paragraphs 1 through 63 as if fully restated herein.

65.     AB Pratt has a contract with Peterson (Exhibit B).

66.     The AB Pratt Proprietary Information is deemed "Confidential Information" under the Peterson-AB Pratt contract.  In addition, AB Pratt owns additional "Confidential Information" in the form of the information contained on a laptop computer used by Peterson/Alshaw while Peterson/Alshaw were being paid by AB Pratt.

67.     In the Peterson-AB Pratt contract, Peterson expressly agreed that she would not make use of AB Pratt's Confidential Information and would return "all written, recorded, or machine-readable Confidential Information."

68.     In the Peterson-AB Pratt contract, Peterson agreed that AB Pratt shall have unlimited right to monitor and amend all aspects of confidential work created by Peterson for AB

Pratt's clients. Peterson further agreed to irrevocably assign all rights of work produced by Peterson to AB Pratt as part of the title transfer agreement signed by Peterson.

69. Despite demand by AB Pratt, Peterson continues to use AB Pratt's Confidential Information. On information and belief, Peterson has disclosed AB Pratt Proprietary Information, including information about AB Pratt's onboarding know-how to VN and BPG. Also, on information and belief, Peterson continues to make use of the information on the laptop computer used by Peterson/Alshaw while Peterson/Alshaw were being paid by AB Pratt.

70. The Peterson-AB Pratt contract expressly provides, as one remedy available to AB Pratt, specific performance of the contract terms.

**WHEREFORE**, AB Pratt prays for: (1) specific performance of its contract barring Peterson's use of AB Pratt's Confidential Information; (2) damages in an amount to be established at trial resulting from Peterson's actions; (3) attorneys' fees and costs; and (4) such other and further relief as this Court deems equitable and just.

## COUNT VIII
### (Peterson's Tortious Interference with AB Pratt's BPG contract)

71. As and for its Paragraph 71, AB Pratt adopts and incorporates Paragraphs 1 through 70 as if fully restated herein.

72. AB Pratt has a contract with Peterson (Exhibit B). AB Pratt discontinued Peterson's service for AB Pratt after the BPG termination effective June 10, 2022. Under the AB Pratt-Peterson contract, Peterson agreed that if Peterson breaches any provision of the agreement, AB Pratt will have the right to obtain performance and injunctive relief with Peterson's acknowledgement that legal remedies alone would be inadequate.

73. Notwithstanding her contractual promises, Peterson through Alshaw directly sought business from FRB behind BPG's back undermining BPGs contract with FRB.

74. Peterson's wrongful actions affected BPG-AB Pratt contract along with BPG-FRB agreements causing a churn in AB Pratt's staff and AB Pratt's reputation.

**WHEREFORE**, AB Pratt prays for: (1) damages in an amount to be established at trial resulting from Peterson's actions; (2) attorneys' fees and costs; and (3) such other and further relief as this Court deems equitable and just.

### COUNT IX
(Breach of Contract by Alshaw– Wrongfully accepting business with BPG)

75. As and for its Paragraph 75, AB Pratt adopts and incorporates Paragraphs 1 through 74 as if fully restated herein.

76. AB Pratt has a contract with Alshaw (Exhibit C).

77. Under Paragraph 8 of the AB Pratt-Alshaw contract, Alshaw agreed that it "cannot pursue" any "business opportunity relating to" AB Pratt's "actual or reasonably anticipated business opportunities."

78. Alshaw (and Peterson) were introduced to the FRB work for BPG by AB Pratt. Obviously, the FRB work for BPG is a "business opportunity" of AB Pratt.

**WHEREFORE**, AB Pratt prays for: (1) specific performance of its contract barring Alshaw's continued pursuit of the business opportunity of employment by BPG; (2) damages in an amount to be established at trial resulting from Alshaw's actions; (3) attorneys' fees and costs; and (4) such other and further relief as this Court deems equitable and just.

### COUNT X
(Breach of Contract by Alshaw – Misuse of AB Pratt's Proprietary Information)

79. As and for its Paragraph 79, AB Pratt adopts and incorporates Paragraphs 1 through 78 as if fully restated herein.

80. BPG purported to terminate the BPG-AB Pratt contract effective June 10, 2022.

81. AB Pratt has a contract with Alshaw (Exhibit C).

82.     On information and belief, Alshaw employs Peterson as the Chief Executive Officer, and BPG pays Alshaw for work performed by Peterson in connection to FRB.

83.     The AB Pratt Proprietary Information is "Information" under the Alshaw-AB Pratt contract that is "valuable, special and unique" to AB Pratt under Section 10.1. In addition, AB Pratt owns additional "Information" in the form of the information contained on a laptop computer used by Peterson/Alshaw while Peterson/Alshaw were being paid by AB Pratt.  Pursuant to Paragraph 2 of the Alshaw-AB Pratt contract's Exhibit A, Alshaw expressly promised not to retain all property "related to [AB Pratt's] business," including "laptop."

84.     In the Alshaw-AB Pratt contract, Alshaw expressly agreed that it will "protect the [AB Pratt] Information and treat it as strictly confidential," refraining from using it "at any time or in any manner, either directly or indirectly"

85.     Despite demand by AB Pratt, Alshaw continues to use AB Pratt's confidential Information.  On information and belief, Alshaw (through Peterson) has disclosed AB Pratt Proprietary Information, including information about AB Pratt's onboarding know-how to VN and BPG. Also, on information and belief, Alshaw (through Peterson) continues to make use of the information on the laptop computer used by Peterson/Alshaw while Peterson/Alshaw were being paid by AB Pratt.

**WHEREFORE**, AB Pratt prays for: (1) specific performance of its contract barring Alshaw's use of AB Pratt's confidential Information; (2) damages in an amount to be established at trial resulting from Alshaw's actions; (3) attorneys' fees and costs; and (4) such other and further relief as this Court deems equitable and just.

## COUNT XI
(VN's Tortious Interference with AB Pratt's Contracts With BPG, Peterson and Alshaw)

86.     As and for its Paragraph 86, AB Pratt adopts and incorporates Paragraphs 1 through 85 as if fully restated herein.

87.     On information and belief, VN has actual knowledge of each of AB Pratt's contracts with BPG (Exhibit A), Peterson (Exhibit B) and Alshaw (Exhibit C).

88.     VN has interfered with AB Pratt's contract with BPG by encouraging the breaches described in Counts I, II and III..

89.     VN has interfered with AB Pratt's contract with Peterson by encouraging the breaches described in Counts V, VI and VII.

90.     VN has interfered with AB Pratt's contract with Alshaw by encouraging the breaches described in Counts IX and X.

91.     AB Pratt has been damaged by the breaches of contract as described in Counts I, II, III, V, VI, VII, IX and X.

**WHEREFORE**, AB Pratt prays for: (1) damages in an amount to be established at trial resulting from VN's actions; (2) attorneys' fees and costs; and (3) such other and further relief as this Court deems equitable and just.

Respectfully submitted,

/s/ Joel E. Sechler
Joel E. Sechler (0076320)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH  43215
(614) 365-4100 (Telephone)
(614) 365-9145 (Facsimile)
sechler@carpenterlipps.com

James L. Thompson (pro hac vice to be filed)
Daniel Lynch (pro hac vice to be filed)
Lynch Thompson LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 346-1600 (Telephone)
(312) 667-9231 (Facsimile)
jthompson@lynchthompson.com
dlynch@lynchthompson.com

*Attorneys for Plaintiff*
*A.B. Pratt & Co.*

## JURY DEMAND

AB Pratt hereby demands a trial by jury.

Respectfully submitted,

/s/ Joel E. Sechler
Joel E. Sechler (0076320)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH  43215
(614) 365-4100 (Telephone)
(614) 365-9145 (Facsimile)
sechler@carpenterlipps.com

James L. Thompson (pro hac vice to be filed)
Daniel Lynch (pro hac vice to be filed)
Lynch Thompson LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 346-1600 (Telephone)
(312) 667-9231 (Facsimile)
jthompson@lynchthompson.com
dlynch@lynchthompson.com

*Attorneys for Plaintiff*
*A.B. Pratt & Co.*